NISHIOKA & FUJIOKA
a Law Corporation

STUART N. FUJIOKA 4223
841 Bishop St. Ste. 224
Honolulu, HI 96813
ph.(808) 524-8833, fax 521-4221

Attorney for defendant
Vanessa Barut [07]

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 1 0 2006

at 11 o'clock and 45 min. A M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| United States of America **Plaintiff**, v. Vanessa Barut, [07] **defendant.** | Cr. No. 01-00160-07 SOM<br><br>DEFENDANT VANESSA BARUT'S [07] SUPPLEMENTAL MEMORANDUM IN AID OF RESENTENCING; EXHIBITS A-G; CERTIFICATE OF SERVICE<br><br>Resentence Hearing: Mon. 7/24/06 3:00 p.m.<br>The Hon. Susan Oki Mollway |
|---|---|

DEFENDANT VANESSA BARUT'S [07] SUPPLEMENTAL MEMORANDUM IN AID OF RESENTENCING

With leave of the Court, defendant addresses herein the historical background of matters which led to sentencing enhancement for obstruction of justice. As noted by the court, her prior counsel was extremely aggressive throughout his representation, and matters were exacerbated by open hostility between himself and the U.S. Attorney.

As the Court had inquired whether any plea negotiations ever took place before the trial, review of correspondence shows that

one offer was made on 11/10/03, about one month before the start of trial.  Knowing the mindset of the AUSA in charge and having some familiarity with the constraints under which he operates, the offer is not one to which the undersigned would expect Muehleck's acquiescence.  11/12/03, the government did present a counteroffer which, with the advantage of hindsight, appears fairly consistent with the verdict ultimately reached.  11/13/03, the defense renewed its offer which was apparently rejected again.

•**Hostility Precluded Negotiation**

The entire proceedings were characterized by a lack of civility.  7/2/01, defense counsel alludes to past problems obtaining discovery from the AUSA [**exh. A**].

Without laying blame, the hearing of 9/10/01 transcript shows that proceedings may even have been lengthened by exchanges and personal attacks unrelated to the merits of the case [**exh. B**].  The tone of interaction is no friendlier 11/9/01 when the hearing resumes [**exh. C**].

Excerpts from May 9, 2002 transcript [**Exh. D**] include arguments about whether documents were properly served, reference to efforts to call the AUSA as a witness and suggestion of anger on the part of the court.

Exchange of 9/19/02 begins with a suggestion that the court

has not read filings on behalf of defendant and is perhaps predisposed towards denial of any motions [**exh. E**]. It also makes reference to accusations of perjury against the government agent.

### •Defendant's Testimony

While criminal prosecution is by nature adversarial, the level of animosity between counsel in this case would cause discomfort even in most experienced trial lawyers. The court should consider that it was in this context that the defendant decided whether and how to testify. While there is no excuse for obstruction, she found herself in a position where she could testify only in a manner consistent with her defense.

### •Defendant's Level of Sophistication

The government has consistently maintained that the obstruction of justice is consistent with defendant's personality, which they describe as manipulative and calculating. However, it should also be noted that defendant's intellect and cognitive tendencies belie such ability or proclivity. For example, as suggested by her grades and standardized test scores in High School [see the transcript attached as **Exhibit F**], she had a poor academic record. She did not graduate and years later obtained an equivalency certificate.

Her own writings in her calendar served to incriminate her

at trial. The planner also contains entries which suggest her memory is not very good and that she can tend to dwell on things which others may not. For example, she writes 7/30/00 "Red Cross testing, fail" [she was taking classes to become a Certified Nurses Assistant, **Exh. G**, p. 21] notwithstanding that the te-test should be a sufficient reminder of the prior result. Menstrual periods for herself and her daughter are noted as VP or LP. She would make entries such as 3/28/01, "rash on face." [exh. B, p.9] and 2/4/01, "accident with truck" [exh. B, p. 8].

- **Inevitability of Trial**

From the start of the case, ongoing hostility resulted in minimal effort at resolution by plea. Exploring possible plea negotiations is an important part of providing adequate representation of a criminal client, and this part is easily precluded by a conflict of interest. Manhault v. Reed, 847 F.2d 576, 82 (9th Cir. 1988). The Ninth Circuit, like others finds this element so crucial that it can be undertaken by counsel on behalf of only one client at a time. Plea agreement earlier in the case could have prevented obstruction and resulted in credits for acceptance, early acceptance and possibly even departure for assistance.

- **Conclusion**

As suggested by the court, none of the circumstances rises

4

to the level of ineffective assistance. Yet a combination of factors, not all of the defendant's doing, resulted in trial instead of amicable resolution, costing her possible acceptance and perhaps even further breaks at sentencing. While it may not have been so under mandatory guidelines, these matters are now appropriate for consideration under the advisory sentencing scheme.

Dated: Honolulu, Hawaii, July 7, 2006.

_____
Stuart N. Fujioka, attorney for defendant

C:\Doc\Fedcrim\2004\Barut\resentence\obstr-mem.001.wpd