1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF HAWAII

 3
                                    )
 4   UNITED STATES OF AMERICA,      )  CR 01-00160 SOM 07
                                    )
 5                     Plaintiff,   )  Honolulu, Hawaii
             vs.                    )  September 10, 2001
 6                                  )  8:30 A.M.
     VANESSA BARUT,                 )
 7                                  )  Motion to Suppress Pre
                       Defendant.   )  and Post-Examination
 8   _____)  Statements Given on
                                       May 30, 2001
 9
                      TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE SUSAN OKI MOLLWAY
                  UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Government:     THOMAS C. MUEHLECK, ESQ.
                             Office of the U.S. Attorney
14                           PJKK Federal Bldg.
                             300 Ala Moana Blvd., Ste. 6100
15                           Honolulu, HI 96850

16   For the Defendant:      MYLES S. BREINER, ESQ.
                             345 Queen St., Fl 2
17                           Honolulu, HI 96813

18   Official Court Reporter: Debra Kekuna Chun, CSR, RPR
                              United States District Court
19                            300 Ala Moana Blvd., Ste. C285
                              Honolulu, HI 96850
20                            (808) 534-0667

21

22

23

24
     Proceedings recorded by machine shorthand, transcript
25   produced with computer-aided transcription (CAT).
```



EXHIBIT B

1  is no case that says absolutely you don't have the
2  discretion.
3          THE COURT: No, I think I have the discretion.
4          MR. BREINER: It disturbs me every time I go to
5  trial in federal court that the case agent, who had an
6  active part in the case, who I want to call at trial, sits
7  and listens to the testimony and then crafts their
8  testimony to be consistent with the government witnesses.
9          THE COURT: Okay. Well, your request is denied.
10 I understand what you're arguing, and I think I do have
11 that discretion, but I have had case agents who have been
12 witnesses in many motions to suppress hearings, and the
13 government otherwise is just going to be an attorney
14 sitting there. I think --
15         MR. BREINER: I'm sorry. Did I miss something,
16 Your Honor? I'm just an attorney here. I don't have
17 someone else holding my hand. Mr. Muehleck is one of the
18 most experienced U.S. attorneys they have in this district.
19         THE COURT: You have your client.
20         MR. BREINER: I have a client.
21         THE COURT: You have your client. And so the
22 government has a representative of its client, too.
23         MR. BREINER: The difference is Mr. Rothermund
24 participated in many aspects of this case, some of which
25 directly impact on today's hearing.

1  one on one with no one else present.
2  A    Well, forgive me to educate you on a polygraph
3  process.  The polygraph process is from the time I get the
4  client till the time that she leaves the room.  So from the
5  time I get with her to the time she leaves is a polygraph
6  process.
7  Q    Thank you for edifying me.  I suffer from what Winston
8  Churchill said:  He loved to learn but hate to be taught.
9         Agent, I know what "process" means, and I know
10 what --
11         THE COURT:  Okay.
12         MR. MUEHLECK:  I'm going to object.
13         THE COURT:  Okay.  Yes.
14         MR. BREINER:  I want to be clear of the question,
15 Your Honor, and I was very clear.
16         THE COURT:  Stop.  Stop.
17         MR. BREINER:  I didn't appreciate the sarcasm.
18         THE COURT:  Stop.  Go ahead and ask a question.
19         MR. BREINER:  Without the sarcasm, Your Honor.
20         MR. MUEHLECK:  I'm going to object, Your Honor.
21         MR. BREINER:  I found it sarcastic with that
22 statement from the witness.  I'll proceed.
23 Q    I asked specifically the test, the actual physical
24 test.
25         THE COURT:  Stop.

1           MR. MUEHLECK: Objection.
2           THE COURT: Yes. I don't think she was being
3   sarcastic. I think she was concerned whether or not you
4   two were on the same wavelength. Maybe you are not; so
5   your remedy is to ask a question. Go ahead.
6           MR. BREINER: Fair enough.
7   Q    The test where you hooked the subject up to the
8   machine, there was just you and her in the room at the
9   time; correct?
10  A    Correct.
11  Q    Now, that test itself took approximately 30 minutes?
12  That portion of it.
13  Q    The actual physically hooking her up and asking the
14  questions.
15  A    Thirty-two minutes.
16  Q    Thirty-two minutes. You're referring to -- you looked
17  down at some document. Does that refresh --
18  A    Yeah, I was visualizing the time in my mind.
19  Q    That's reflected in the file that you haven't
20  disclosed.
21  A    Yes.
22  Q    Exactly 32 minutes is reflected there. Okay.
23          You spent about two hours prior to the actual
24  physical test interviewing her in the pretest period?
25  A    I started at 10:05. And 11:32 the physical testing

1          Go ahead. You can ask another question.
2   BY MR. BREINER:
3   Q    Did you not -- in response to my question to you if I
4   could be present did you not tell me that I could not be
5   present during the polygraph process?
6   A    That's correct.
7   Q    Now, the process -- now, this goes back to our
8   original or my original confusion. In your mind the entire
9   polygraph process begins from the moment you walk in the
10  room to the pretest interview through the test itself and
11  all the way through to whenever you say the test is
12  completed. Is that correct?
13  A    That's correct. And I'd like to qualify the question
14  before, if I may.
15  Q    Did you understand my question?
16  A    Yes, but I'd like to add something to the question
17  before I just recalled.
18  Q    The entire process -- excuse me. I'm conducting the
19  examination.
20  A    Okay. I'm sorry.
21  Q    If I may, Your Honor.
22  A    I just wanted to add something.
23       MR. BREINER: Excuse me. Mr. Muehleck's here,
24  and he can assist you. I assume the court will allow him
25  to.

1   and 3, as it were, is in your mind the polygraph process.
2   A    Correct.
3           MR. MUEHLECK: I'm going to object. Counsel has
4   no right to force the defendant the language he wishes to
5   use. She may answer the way she --
6           MR. BREINER: Excuse me. What objection -- what
7   legal objection is that, Your Honor? The witness agreed to
8   it. There's no objection. The witness agreed to it.
9           THE COURT: You know, half of what both of you
10  said is not on the record. So you might just like to hear
11  the echo of your voice here, but it's not on the record
12  because both of you are so excited you're talking over each
13  other, making it impossible for the court reporter.
14          I'm going to allow this; so the objection is
15  overruled.
16          MR. BREINER: Thank you.
17  Q    Did you inform Miss Barut that there was a -- that you
18  anticipated a third portion, the post-polygraph interview,
19  after the polygraph? Did you tell her that before she
20  began the test?
21  A    No, sir.
22  Q    You did tell her, though, say -- stop there for a
23  second. Exhibit B and C, the Miranda advisement and the
24  polygraph examination consent form, Agent Watson was
25  present for that; correct?

1   to put words in your mouth.
2   A    As we testified earlier, she signed the Miranda
3   advisement at 10:07 A.M. and signed the polygraph
4   examination consent form at 10:09 A.M.  And then you would
5   have been allowed to speak with your client at that time if
6   you had chose to.
7   Q    Do you recall my informing you when I gave you my card
8   that, if there are any questions, I was only a block away
9   and I could be there in a few minutes?
10  A    Oh, no, sir.  You were real excited.  You said:  I
11  don't know why that receptionist came to get me.  "I didn't
12  want to see you.  I'm here to see Michael Rothermund.  I'm
13  not here to see you.  I don't care what you're doing."  You
14  even put your hands up like this (indicating).  You were
15  like really put out that I was even in the lobby.
16            MR. BREINER:  That's fine, Agent.  I appreciate
17  the drama.
18            MR. MUEHLECK:  Objection.
19            MR. BREINER:  My question was -- Your Honor, it's
20  self-serving.  I respond to it.  My apologies.  I still see
21  it as wonderful melodrama for this hearing.  My question as
22  to this witness --
23            THE COURT:  Hold on.
24            MR. BREINER:  I had a specific question, Your
25  Honor, that was not asked.  Or, excuse me, was not

1   examination -- excuse me.  Post-polygraph interview or
2   interrogation?
3   A   No.  That's not our process or procedure.
4   Q   Did you tell her that?
5   A   No.
6   Q   So she had no way of knowing that.
7           MR. MUEHLECK:  Objection.  We don't know if Miss
8   Barut was told by somebody else how it's conducted or not.
9           MR. BREINER:  I'm asking what this witness said,
10  Your Honor.  Excuse me.
11          THE COURT:  The objection is sustained.  You can
12  rephrase your question.
13  BY MR. BREINER:
14  Q   To the best of your knowledge you nor Agent Watson did
15  not inform Miss Barut that she would be subject to a
16  post-polygraph interview.
17          MR. MUEHLECK:  Objection.  Asked and answered.
18          MR. BREINER:  I asked her or Watson.
19          MR. MUEHLECK:  Compound question.  Objection.
20          MR. BREINER:  They're both together in the same
21  room.  This is getting really childish.
22          THE COURT:  I'll sustain that.  You can break it
23  down.  Go ahead.
24  BY MR. BREINER:
25  Q   Did you tell her she was going to be subject to a

```
 1              THE COURT:  That I have.
 2              MR. BREINER:  Also my motion to suppress also
 3    contains a declaration and argument; so it's -- the
 4    government's placed clearly on notice, Your Honor.  Plus
 5    the letters that I've sent what I'm after, I've attempted
 6    repeatedly to get this information.  I've been tooth and
 7    nail -- that's why I requested at the outset that her file
 8    be copied and placed in camera.
 9              THE COURT:  Okay.  So, Mr. Muehleck, when you're
10    talking about compliance with the CFR, are you looking at
11    this August 8 declaration or something else?
12              MR. MUEHLECK:  Moment please, Your Honor.
13              THE COURT:  Yes.
14              MR. MUEHLECK:  Yes.  This declaration indicates
15    only what they were going to ask questions about what
16    advice she was given, that they would have to call these
17    witnesses to establish post-polygraph interrogation, they
18    failed to inform her.  They don't indicate in here that
19    they're going to go into great detail about the nature of
20    the test, the procedures of the test, the questions asked
21    durig the test.
22              We have gone through this discovery hearing
23    through the magistrate, and that discovery has been denied.
24    And, frankly, this witness is not allowed to go into her
25    training or the training of a polygrapher or the methods of
```

```
 1   questioning of a polygrapher or the methods of asking
 2   questions and their type of material.  That's why the CFR
 3   exists:  to prevent that sort of thing.
 4            Now, if Mr. Breiner wants to turn this into a
 5   discovery proceeding to get --
 6            THE COURT:  I'm not going to allow that.
 7            MR. BREINER:  Your Honor, can I respond to that?
 8            THE COURT:  Yes.
 9            MR. BREINER:  Counsel is so offbase that it's
10   ridiculous.  There's been no ruling by any court precluding
11   me from that.  And it's core to the defense on the
12   suppression issue for the court to have a full record and
13   complete record of what occurred.
14            The questions that were asked of my client are
15   relevant because in the report in exhibit A that's in
16   evidence there's the suggestion that she failed two
17   questions.  Yet my client's told at the polygraph she
18   failed one, the first question, not the second question.
19            Also there's a distortion that's contained in the
20   report that was submitted that I believe this agent's
21   records will reflect that there's a distortion as language
22   used.  Since we're talking about language and how people
23   use the word "process" versus "test" -- for example, in
24   defense exhibit A, if you look at the report of this agent,
25   the agent uses words like -- these are pejorative words,
```

NIEDERHOFER - DIRECT

51

1   indicated. Based on the analysis of the charts collected,
2   the physiological responses indicate deception." That
3   statement, the opinion, is that in reference to the two
4   questions above it?
5           Not looking at Mr. Muehleck. I asked you a
6   question. Is that the two questions you're referring to as
7   far as deception?
8           MR. MUEHLECK: Objection.
9           THE COURT: Sustained.
10          MR. BREINER: On what basis, Your Honor?
11          THE COURT: I don't see the relevance of what her
12  opinions are or what she's basing her opinions on because
13  that's not what your motion concerns. Your motion concerns
14  the waivers that were given, whether they were knowing and
15  voluntary and whether they were informed. You want to look
16  at the scope of your waiver and so forth, but that's not
17  what you're going to right now.
18          MR. BREINER: May I proceed.
19          THE COURT: I'm hoping you will. Go ahead.
20          MR. BREINER: Was that comment necessary?
21          THE COURT: You want to argue with me, Mr.
22  Breiner?
23          MR. BREINER: No, Your Honor. I'm just surprised
24  you said that.
25          THE COURT: It's not going to help you out a lot.